UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | | |
|---|---|---|
| M.T.B., | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 2: 24-028-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| SHAWN BYERS, Acting Director, | ) | **MEMORANDUM OPINION** |
| Chicago Field Office, Immigration and | ) | **AND ORDER** |
| Customs Enforcement, et al., | ) | |
| | ) | |
| Respondents. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

M.T.B. has been in custody pursuant to 8 U.S.C. § 1226(c) for going on 19 months. Since § 1226(c) provides for mandatory detention of criminal aliens, he has not been afforded an individualized hearing regarding his potential release on bond. M.T.B. has now filed a petition under 28 U.S.C. § 2241 alleging that the Due Process Clause of the Fifth Amendment entitles him to release or, in the alternative, a bond a hearing. The Court has considered his claim under the framework set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), and concludes that, in the circumstances of this case, M.T.B.'s detention has become so prolonged that he is entitled to an individualized bond hearing before an immigration judge.

**I.**

M.T.B. was born in Mexico but has lived in the United States since he was a child. He was granted permanent resident status in 1989, at the age of 19. Many years later, he was convicted of and completed a prison sentence for methamphetamine trafficking imposed in the United States District Court for the Eastern District of Missouri. On February 2, 2023, the

Department of Homeland Security ("DHS") notified M.T.B. that he is removable from the United States pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) due to his conviction.  He was arrested and detained in the Boone County Jail in Burlington, Kentucky the same day.

M.T.B. applied for deferral of removal under the Convention Against Torture ("CAT"), 8 C.F.R. § 1208.17(a).  The application was denied but M.T.B. appealed the decision to the United States Court of Appeals for the Seventh Circuit where it remains pending.  *See M.T.B. v. Garland*, No. 23-2941.  The Seventh Circuit granted M.T.B. a stay of removal pending resolution of the petition on November 21, 2023.  That matter is set for oral argument on September 5, 2024.  M.T.B. remains in detention at the Boone County Jail.

On February 29, 2024, M.T.B. filed a petition in this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  He alleges that his continued detention violates the Due Process Clause of the Fifth Amendment to the United States Constitution.

## II.

M.T.B. named as respondents Shawn Byers, Acting Director of the Chicago Field Office of Immigration and Customs Enforcement ("ICE"), and Jason Maydak, Jailer of the Boone County Jail.  Maydak contends that he is not a proper respondent to the petition because, as Boone County Jailer, he has no independent authority to release M.T.B. from detention. [Record No. 24, pp. 3-4]  But as this Court explained in some detail in *Cerimovic v. Byers*, 2: 24-CV-026 (E.D. Ky. May 8, 2024), "the federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over the petitioner.'" *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004).  *See also In re Gregory*, 181 F.3d 713, 714 (6th Cir. 1999) (noting that a petition for a writ a habeas corpus under § 2241 is confined to the district court having jurisdiction over the petitioner's custodian).  And as the person who has

"day-to-day control over the facility in which [M.T.B.] is being detained," Maydak is M.T.B.'s

custodian.  *See Roman v. Ashcroft*, 340 F.3d 314, 319 (6th Cir. 2003).  Accordingly, Maydak's

request to dismiss him as a respondent will be denied.

## III.

M.T.B. is detained pursuant 8 U.S.C. § 1226(c), which states, in part:

(1) CUSTODY
The Attorney General shall take into custody any alien who . . . is deportable by
reason of having committed any offense covered in section 1227(a)(2)(A)(ii),
(A)(iii), (B), (C), or (D) of this title . . . .

(2) RELEASE
The Attorney General may release an alien described in paragraph (1) only if
the Attorney General decides pursuant to section 3521 of title 18 that release of
the alien from custody is necessary to provide protection to a witness, a potential
witness, a person cooperating with an investigation into major criminal activity,
or an immediate family member or close associate of a witness, potential
witness, or person cooperating with such an investigation, and the alien satisfies
the Attorney General that the alien will not pose a danger to the safety of other
persons or of property and is likely to appear for any scheduled proceeding. . . .

8 U.S.C. § 1226(c).

The parties agree that detention under § 1226(c)(1) is mandatory unless one of the

circumstances in § 1226(c)(2) apply and that none are applicable in this case.  The parties also

agree that, despite the mandatory language of § 1226(c)(1), an alien's detention can become

so prolonged as to offend due process, particularly if the alien is not provided an individualized

bond hearing.  *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (providing that the

Constitution establishes due process rights for "all 'persons' within the United States,

including aliens, whether their presence here in lawful, unlawful, temporary, or permanent.").

The parties' disagree regarding *when* a due process violation occurs and *what test* the Court

should apply to determine whether it has occurred.

- 3 -

Not surprisingly, there is no controlling authority that answers these questions. However, there is persuasive authority from the Supreme Court and various circuit courts to guide the analysis. In *Demore v. Kim*, 538 U.S. 510 (2003), an alien subject to removal under § 1226(c) alleged that his six-month detention violated due process because he did not receive an individualized bond hearing. The Supreme Court rejected this claim, observing first that Congress, in its broad power over naturalization and immigration proceedings, regularly makes rules that would be unacceptable if applied to United States citizens. *Id*. at 521 (quoting *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976)). Additionally, detention pending removal necessarily serves the purpose of preventing aliens from fleeing prior to or during removal proceedings. *Id.* at 527-28. Finally, detention under § 1226(c) has a definite termination point which, as of *Demore*'s writing, lasted for less than 90 days in the majority of cases. *Id.* at 529. *But see Jennings v. Rodriguez*, 583 U.S. 281, 312 (2018) (declining to reach the respondents' arguments regarding the constitutionality of prolonged detention under § 1226(c)).

M.T.B. asks the Court to adopt the multi-factor approach applied by the Third Circuit in *German Santos v. Warden Pike County Correctional Facility*, 965 F.3d 203, 207 (3d Cir. 2020), in evaluating his due process claim. In determining when detention becomes unreasonable and thus requires a bond hearing, the court noted that "[t]he most important factor is the duration of detention." *Id.* at 211. While there is no bright-line threshold that creates a presumption of unreasonableness, the duration of detention is considered along with other factors, including whether detention is likely to continue, the reasons for the delay, and whether the alien's conditions of confinement are meaningfully different from criminal punishment. *Id.* at 211-12.

- 4 -

The respondents favor a version of the balancing test announced in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to determine whether M.T.B. is entitled to relief.  The United States Court of Appeals for the Second Circuit recently confronted the issue of prolonged detention under § 1226(c) and determined that a new test was not necessary, as the *Mathews* test is flexible and "takes account of individual circumstances." *Id.* at 148 (quoting *Rodriguez-Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022)).  This Court finds the reasoning in *Black v. Decker,* 103 F.4th 133 (2d Cir. 2024), persuasive and will apply the *Mathews* framework, as articulated therein, in this matter.

In considering the petitioner-aliens' claims under *Mathews*, the *Black* court first considered the private interest that would be affected by the official action.  103 F.4th at 151 (quoting *Mathews*, 424 U.S. at 335).  It is difficult to imagine a more significant liberty interest than an individual's interest in being free from unnecessary confinement.  *See Zadvydas*, 533 at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.").  Although M.T.B.'s detention is a result of a criminal adjudication, he has completed his sentence and his detention does "not arise from new or unpunished conduct."  *See Black*, 103 F.4th at 151.  M.T.B. has been housed with "people in immigration custody" and "people who are in jail for criminal cases" for over 18 months.[1]

While M.T.B.'s detention inevitably has been prolonged by his pursuit of relief under the CAT, there is no suggestion that he has acted in bad faith in an effort to delay his removal.

---

[1]      In *Black*, the court deemed petitioners' seven and 21-month detention periods "prolonged" and concluded that they "seriously affected" the petitioners' private interests under the first prong of *Mathews*.  103 F.4th at 151-52.

*See Ly v. Hansen*, 351 F.3d 263, 272 (6th Cir. 2003) (observing that an alien is not responsible for the ordinary delays caused by appeals).  M.T.B. also reports experiencing some personal hardships as a result of his prolonged detention, including the inability to seek medical treatment for a variety of health problems, including the unexplained deterioration of muscles in his right hand.  Based on the foregoing, the first *Mathews* factor weighs in favor of M.T.B.

Next, the Court considers "the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards."  *See Black*, 103 F.4th at 151 (quoting *Mathews*, 424 U.S. at 335).  Notably, the procedural protections in place for aliens detained under § 1226(c) are "almost nonexistent," as they provide no individualized review of the need for detention and no mechanism for the detainee's release.  *Id*. at 152.  Instead, the only procedural protection available appears to be the alien's ability to contest that he committed the crime that renders him subject to mandatory detention.  *Id.* (citing *Matter of Joseph*, 22 I. & N. Dec. 799 (BIA 1999)).  Obviously that is not a viable option for an individual like M.T.B. who pleaded guilty to the crime and served a lengthy custodial sentence.  In the absence of any meaningful procedures at the outset of detention, it appears "that almost any additional procedural safeguards at some point in the detention would add value."  *Black*, 103 F.4th at 153.

The Court also considers M.T.B.'s individual circumstances under the second *Mathews* factor.  In *Black*, the court observed that the petitioners had led "peaceful" or "lawful" lives in the years between their criminal convictions and immigration arrests.  103 F.4th at 153.  While M.T.B. alleges that he has "learned [his] lesson not to get involved in drug trafficking," the Court has no information concerning M.T.B.'s disciplinary record while in custody.  Further,

it is unclear when M.T.B. completed his criminal sentence and whether he had an opportunity to demonstrate a tendency toward lawfulness prior to being arrested by DHS agents.

The seriousness of M.T.B.'s underlying crime does not significantly inform this Court's analysis. *See Reid v. Donelan*, 17 F.4th 1, 17 (1st Cir. 2021) (J. Lipez, dissenting) (explaining the broad sweep of detention under 1226(c), which includes those who "have committed violent felonies, but also those who have committed nonviolent crimes and simple drug offenses"). M.T.B. pleaded guilty to possessing actual methamphetamine with the intent to distribute it, which undoubtedly is a serious crime. However, according to M.T.B. he acted exclusively as a money courier and was only involved in criminal activity for six months. [Record No. 1-1] Based on all of these considerations, the second *Mathews* factor weighs somewhat in M.T.B.'s favor.

The third and final factor under *Mathews* requires the Court to consider "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *Id.* (quoting *Mathews*, 424 U.S. at 335). The respondents cite the government's interest in preventing deportable aliens from fleeing and continuing to engage in crime. [Record Nos. 23, pp. 16-17; 24, p. 9] Without question, these are important and substantial interests for the government during removal proceedings. But these are the same interests that allow the government to detain an alien for a reasonable period under § 1226(c). And as the court noted in *Black*, providing an individualized bond hearing does not undermine these interests. 103 F.4th at 153-54. To continue holding an alien for a period that has become unreasonably prolonged, the government must identify some additional interests that justify doing so without providing

- 7 -

the alien a due process hearing.  The respondents have failed to do so here, so this factor also weighs in favor of M.T.B.

Since each of the *Mathews* factors weighs in M.T.B.'s favor, he is entitled to a bond hearing.[2]

## IV.

The parties disagree regarding who should bear the burden of proof during any bond hearing.  M.T.B. contends that, because he is being held in violation of his due process rights, the government must justify his continued detention by clear and convincing evidence.  Respondent Byers argues that M.T.B. should bear the burden of proof, noting that "no binding authority from the Supreme Court or the Sixth Circuit" supports M.T.B.'s position on this issue.  [Record No. 23, pp. 21-22]

While no controlling authority addresses the burden-of-proof question, numerous courts have considered the question under similar circumstances and have concluded that the government must justify continued detention by clear and convincing evidence.  *See, e.g., Black*, 103 F.4th at 155-57; *German Santos*, 965 F.3d at 213; *Jarpa v. Mumford*, 211 F. Supp. 3d 706, 721 (D. Md. 2016); *Haughton v. Crawford*. 221 F. Supp. 3d 712 (E.D. Va. 2016).  The respondents do not identify any case law to the contrary.

---

[2]     M.T.B. argues that *Culley v. Marshall*, 144 S. Ct. 1142 (U.S. May 9, 2024) "casts doubt on whether *Mathews* should govern a request for a preliminary hearing." [Record No. 20]  But *Culley* involved a due process challenge to Alabama's practice of retaining individuals' cars during the civil forfeiture process without holding preliminary hearings.  The court applied the four-factor test announced in *Barker v. Wingo*, 407 U.S. 514 (1972), to determine whether due process had been satisfied.  However, the court but did not make any broad pronouncements concerning the applicability of *Mathews* and the case did not involve immigration matters. Regardless, the Court will refrain from considering this argument in further detail since M.T.B. prevails under the *Mathews* framework.

Byers points to the witness protection exception to mandatory detention under 8 U.S.C. § 1226(c)(2), which places upon the alien the burden of proof to justify his release. [Record No. 23, p. 21]  But unlike an alien seeking release under that provision, M.T.B. "has already been deprived of a liberty interest" based on his prolonged detention.  Requiring him to bear the burden of proof at his bond hearing would create an "unacceptably high . . . risk of erroneous deprivation" of his liberty interest.  *Black*, 103 F.4th at 155.  This risk is compounded by the fact that noncitizens are not entitled to appointed counsel in removal proceedings.  *See id.* (citing 8 U.S.C. § 1362).

The Court also is unpersuaded by Byers' suggestion that the procedures set forth in 8 U.S.C. § 1226(a) should influence the instant matter.  An alien detained under § 1226(a) may be released on bond if he "demonstrate[s] ... that such release would not pose a danger to property or persons, and that [he] is likely to appear for any future proceeding."  8 C.F.R. § 236.1(c)(8).  But unlike an alien detained pursuant to § 1226(c), a § 1226(a) detainee is entitled to an individualized bond hearing before an IJ to determine whether detention is necessary during the course of his immigration proceedings.  *Martinez v. Larose*, 968 F.3d 555, 560 (6th Cir. 2020).  *See also* 8 C.F.R. § 236.1(d)(1); 236.1(d)(3) (providing for redetermination and appeal of detention decision).  Requiring detainees to prove that they are *not* a danger and are *not* a flight risk after the government has already "enjoyed a presumption that detention is necessary . . . presents too great a risk of an erroneous deprivation of liberty after a detention that has already been unreasonably prolonged."  *Black*, 103 F.4th at 156.  *See also Jarpa*, 211 F. Supp. 3d at 721 (noting that the Supreme Court "time and again has rejected laws that place on the individual the burden of protecting his or her fundamental rights").

**V.**

Based on the foregoing analysis, it is hereby

**ORDERED** as follows:

1.       M.T.B.'s petition under 28 U.S.C. § 2241 is **GRANTED**.

2.       Within **30 days** the Respondents are directed to provide M.T.B. with an individualized bond hearing before an immigration judge during which the government will bear the burden to prove by clear and convincing evidence that M.T.B. presents a flight risk and/or is a danger to the community.

Dated: August 20, 2024.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky